1   ROBERT R. MOORE (BAR NO. 113818)
    WILLIAM W. HUCKINS (BAR NO. 201098)
2   MARLENE M. MOFFITT (BAR NO. 223658)
    ALLEN MATKINS LECK GAMBLE
3     MALLORY & NATSIS LLP
    Three Embarcadero Center, 12th Floor
4   San Francisco, CA  94111-4074
    Phone:  (415) 837-1515
5   Fax:  (415) 837-1516
    E-Mail:  rmoore@allenmatkins.com
6            whuckins@allenmatkins.com
             mmoffitt@allenmatkins.com
7
    Attorneys for Plaintiff
8   Burlingame Capital Partners II, L.P.

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    OAKLAND DIVISION

12  | In re                              | Case No. 04-46443-LT |

13  | HARRY FRED KOELLING and LINDA ANN   | Chapter 7 |
    | KOELLING,                           |

14
                 Debtors.
15

16  | BURLINGAME CAPITAL PARTNERS II,     | Adv. Proc. No. 08-04204 |
    | L.P.,                               |

17               Plaintiff,             **PLAINTIFF BURLINGAME CAPITAL
                                          PARTNERS II, L.P.'S OPPOSITION TO
18        vs.                             MOTION TO STRIKE PORTIONS OF
                                          COMPLAINT**
19  HARRY FRED KOELLING and LINDA ANN
20  KOELLING,                            Date:     November 20, 2008
                                         Time:     2:00 p.m.
21               Defendants.             Ctrm:     201
                                         Judge:    Hon. Leslie Tchaikovsky
22
                                         Complaint Filed:   August 1, 2008
23                                       Trial Date:        Not Set

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

OPPOSITION TO MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  RELEVANT BACKGROUND ............................................................ 4

III. THE MOTION SHOULD BE DENIED BECAUSE IT FAILS TO
     STATE ANY LEGAL REASON TO STRIKE ANY PORTION OF
     BURLINGAME'S COMPLAINT ........................................................ 5

     A.   ANY ALLEGATION BEARING ON THE SUBJECT
          MATTER OF THE LITIGATION IS MATERIAL AND
          RELEVANT TO THE COMPLAINT FOR PURPOSES OF
          RULE 12(f) AND, THUS, CANNOT BE STRICKEN .................... 5

     B.   THE ALLEGATIONS CONTAINED IN PARAGRAPHS 15-17,
          19 AND 25-20 REGARDING KIDS CONNECTION ARE
          RELEVANT AND MATERIAL TO DETERMINING THE
          KOELLINGS' DISCHARGE AND MUST NOT BE
          STRICKEN ..................................................................................... 7

          1.   PARAGRAPHS 15-17 INVOLVING KIDS CONNECTION AND
               THE STATE COURT TRIAL ARE PERTINENT AND MATERIAL
               TO EACH CAUSE ACTION IN THE COMPLAINT AND TO
               BURLINGAME'S STATUS AS A CREDITOR ............................ 7

          2.   PARAGRAPH 19 INVOLVING THE KOELLINGS' PERSONAL
               EXPENSES IS RELEVANT AND MATERIAL TO
               BURLINGAME'S CAUSES OF ACTION UNDER
               SECTION 727(A)(2), (3) AND (4) ............................................. 11

          3.   PARAGRAPHS 25-30 ARE RELEVANT AND MATERIAL TO
               BURLINGAME'S CLAIMS UNDER SECTION 727(A)(4) AND (7) ............... 12

     C.   THE MOTION SHOULD BE DENIED BECAUSE THE
          ALLEGATIONS CONTAINED IN PARAGRAPH 32
          REGARDING QMECT ARE RELEVANT AND MATERIAL
          TO DETERMINING WHETHER THE KOELLINGS' ARE
          ENTITLED TO A DISCHARGE ................................................... 15

     D.   THE MOTION SHOULD BE DENIED BECAUSE THE
          ALLEGATIONS CONTAINED IN PARAGRAPHS 38-42 ARE
          RELEVANT AND NECESSARY TO DETERMINING
          WHETHER THE KOELLINGS ARE ENTITLED TO A
          DISCHARGE ................................................................................. 16

     E.   THE MOTION SHOULD BE DENIED BECAUSE THE
          ALLEGATIONS IN PARAGRAPHS 53-55 REGARDING
          QMECT'S AND THE KOELLINGS' RECORDS ARE
          RELEVANT AND MATERIAL TO DETERMINING
          WHETHER THE KOELLINGS ARE ENTITLED TO A
          DISCHARGE ................................................................................. 17

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

F.    THE MOTION SHOULD BE DENIED BECAUSE THE ALLEGATIONS CONTAINED IN PARAGRAPHS 56-59 AND 66-69 REGARDING QMECT'S RECORDS ARE RELEVANT AND MATERIAL TO DETERMINING THE KOELLINGS' DISCHARGE ...........................................................................................19

IV.    CONCLUSION ...........................................................................................21

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Davis v. Ruby Foods, Inc.,*
    269 F.3d 818 (7th Cir. 2001) ................................................................. 6

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir. 1993) ................................................................ 5

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994) ............................................................................... 5

*Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.),*
    32 B.R. 199 (Bankr. S.D.N.Y. 1983) ............................................... 5, 16

*In re Adeeb,*
    787 F.2d 1339 (9th Cir. 1986) ................................................................ 8

*In re Bernard,*
    96 F.3d 1279 (9th Cir. 1996) .................................................................. 9

*In re Garcia,*
    168 B.R. 403 (D. Ariz. 1994) ............................................................... 14

*In re Gollomp,*
    198 B.R. 433 (S.D.N.Y. 1996) .............................................................. 14

*In re Lawson,*
    122 F.3d 1237 (9th Cir. 1997) ......................................................... 8, 11

*In re Scott,*
    172 F.3d 959 (7th Cir. 1999) .................................................................. 8

*In re Sholdra,*
    249 F.3d 380 (5th Cir. 2001) .................................................................. 9

*In re Sriberg,*
    49 B.R. 80 (Bankr. Mass. 1984) ...................................................... 5, 16

*In re Tan,*
    350 B.R. 488 (Bankr. N.D. Cal. 2006) .................................................. 9

*In re Turner,*
    335 B.R. 140 (Bankr. N.D. Cal. 2005) .................................................. 9

*In re Woodfield,*
    978 F.2d 526 (9th Cir. 1992) .................................................................. 8

*RDF Media Ltd. v. Fox Broadcasting Co.,*
    372 F.Supp.2d 556 (C.D. Cal. 2005) ..................................................... 7

*Salcer v. Envicon Equities Corp.,*
    744 F.2d 935 (2nd Cir. 1984) ............................................................... 19

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

|  | Page(s) |
|---|---|

*Stanbury Law Firm v. IRS*,
    221 F.3d 1059 (8th Cir. 2000) .................................................................................... 7

*Stewart Enterprises, Inc. v. Horton (In re Horton)*,
    621 F.2d 968 (9th Cir. 1980) ..................................................................................... 8

*Toucheque v. Price Bros. Co.*,
    5 F.Supp.2d 341 (D. Mo. 1998) ................................................................................. 6

## Statutes

11 U.S.C. § 101(31) ........................................................................................... 9, 17

11 U.S.C. § 727(a)(2) ......................................................................................... passim

11 U.S.C. § 727(a)(3) ......................................................................................... passim

11 U.S.C. § 727(a)(4) ......................................................................................... passim

11 U.S.C. § 727(a)(7) ......................................................................................... passim

28 U.S.C. § 959(b) ................................................................................................ 15

Plaintiff Burlingame Capital Partners II, L.P. ("Burlingame") hereby submits its opposition to Defendants Harry Fred and Linda Ann Koellings' (together, the "Koellings") Motion to Strike Portions of Complaint filed in the above-captioned adversary proceeding (the "Motion").

The Opposition is based on the Opposition below, the Declaration of Marlene M. Moffitt in support of the Opposition and filed concurrently herewith, the Request for Judicial Notice in support of the Opposition and filed concurrently herewith, the pleadings, records and documents in this case, and on such other evidence as may properly be before this Court.

# I.    INTRODUCTION

The Motion should be denied as it fails to provide any legal reason to strike paragraphs 15-17, 19, 25-30, 32, 38-42, 53-55, 56-59 and 66-69.  Contrary to the Koellings' suggestion, allegations of a complaint cannot be struck under Rule 12(f) if they have any bearing on or relation to the subject matter of the litigation.  Absent a showing that the allegations have no relation to or bearing upon the subject matter of the litigation, the challenged allegations should not be stricken.  These liberal pleading rules are amplified, where, as here, Burlingame is in the position of a third party outsider to the alleged misconduct who must plead allegations based on secondhand knowledge for the benefit of estate and its creditors.  As discussed more thoroughly in this Opposition, the allegations of the Complaint challenged in the Motion are relevant and material to Burlingame's claims objecting to the Koellings' discharge, and they relate to and bear upon the subject matter of the litigation.  As such, the challenged allegations should not be stricken and the Motion should be denied.

Burlingame's Complaint is based on Sections 727(a)(2), (3), (4) and (7).  Under these sections, a debtor will be denied a discharge where the debtor, with the intent to hinder, delay or defraud a creditor, concealed, destroyed or mutilated property of the estate within one year of bankruptcy or during the bankruptcy case (Section 727(a)(2)); concealed, mutilated, destroyed or falsified its books and records, and/or failed to keep adequate books and records, from which the debtor's financial condition or business transactions could be ascertained (Section 727(a)(3)); made a false statement or oath in connection with its bankruptcy case (per Section 727(a)(4)); or engaged in any of misconduct described in Sections 727(a)(2) through 727(a)(6) in connection

with the bankruptcy case of an insider, either during the debtor's bankruptcy case or within one year thereof (Section 727(a)(7)).  Under Bankruptcy Code section 101(31), an insider includes a corporation owned, controlled and/or managed by the debtor.  Here, as detailed below, Kids Connection, Inc. ("Kids Connection'") and QMECT, Inc. ("Qmect") are statutory insiders for purposes of this action.

The Motion seeks to exclude, among other things, allegations regarding a State Court trial finding that the Koellings committed fraud and malice in their dealings with Kids Connection, Qmect and Burlingame.  In the State Court trial, the jury found, among other things, that the Koellings intentionally and wrongfully interfered with Burlingame's the contractual relations.  During State Court trial, the evidence revealed that substantial personal expenses of the Koellings were paid by and through Kids Connection, which the Koellings attempted to conceal and failed to disclose during the bankruptcy.  The challenged allegations regarding the State Court trial (set forth in Paragraphs 15-17 and 19 of the Complaint) are clearly relevant and material to Burlingame's claims under Sections 727(a)(2), (3), (4) and/or (7).  These allegations relate to and bear upon the Koellings' concealment of income and assets and destruction of estate property (through a dissipation of value that would otherwise be available to the Koellings' creditors) during their bankruptcy case (and within a year thereof).  These allegations also relate to and bear upon the Koellings' concealment and destruction of pertinent financial information and failure to maintain adequate records, from which to ascertain the Koellings' financial condition and business transactions; the Koellings' knowing and fraudulent presentment of a false claim and oath in their case; and the Koellings' misconduct in connection with the bankruptcy case of insiders, during and within a year of their own personal bankruptcy case.  As such, these allegations should not be stricken under Rule 12(f).

The Motion also seeks to strike allegations of other misconduct involving Ms. Koelling's purported employment contract, which was asserted in varying amounts in the Koellings personal bankruptcy and in the Kids Connection bankruptcy.  In the State Court trial Ms. Koelling conceded she was not entitled to any payments under the employment agreement.  Furthermore, in her personal bankruptcy case, the Koellings asserted a claim of exemption, which they later

conceded had no merit. The allegations related to Ms. Koelling's purported employment agreement (set forth in Paragraphs 25-30 of the Complaint) are relevant and material to Burlingame's objections to the Koellings' discharge under Section 727(a)(4) and (7) as they relate to the Koellings' knowing and fraudulent presentment of false claims and oaths in their bankruptcy case, as well as misconduct in connection with the bankruptcy case of an insider. These allegations, as well as the allegations outlined above concerning Kids Connection, also relate to the subject matter of the litigation and provide context and background to the Koellings' misconduct. As such, they should not be stricken under Rule 12(f).

The Motion further seeks to strike allegations concerning the Koellings' misconduct both personally and in connection with and through Qmect and Kids Connection (paragraphs 32, 38-42, 53-55, 56-59 and 66-69 in the Complaint). These allegations not only are relevant and material to Burlingame's claims under Section 727(a), but also relate to the subject matter of the litigation. As such, the allegations should not be stricken.

Paragraph 32 alleges that Fred Koelling violated environmental regulations during the Qmect bankruptcy case, misconduct that violates an order of this Court and violates Fred Koelling's duties as the responsible individual and debtor-in-possession of Qmect. Paragraphs 38-42 allege that the Koellings, in connection with and through Qmect and Kids Connection, illegally interfered with Burlingame's contractual rights and illegally devised a scheme to derail Burlingame's foreclosure efforts and defraud Burlingame. These allegations not only relate to the subject matter of the litigation, but also provide background and context from which a trier of fact could infer the Koellings' intent with respect to other allegations in the Complaint. Paragraphs 53-55 allege the Koellings destroyed and mutilated records pertinent to their own financial condition and the financial condition of Qmect. Lastly, paragraphs 56-59 and 66-69 (which are part of an overall discussion of the Koellings' misconduct related to Cyberchem and Mr. Burke) allege that the Koellings, in connection with and through Qmect and Kids Connection, took property of Qmect, transferred it to others, including Kids Connection, and attempted to conceal the misconduct. Such misconduct occurred during and within one year of the Koellings' bankruptcy case. The Koellings failed to report these transactions as income in their personal bankruptcy

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

case, defrauded creditors, concealed assets, violated court orders, presented false statements and accounts, and failed to keep adequate financial records from which the business transactions could be ascertained. These allegations involving Qmect are clearly relevant and material to Burlingame's claims under Section 727(a)(2), (3), (4) and (7). These allegations also provide context and background to the other allegations in the Complaint and the Koellings' misconduct. As such, the allegations should not be stricken under Rule 12(f).

As a whole, the Motion impermissibly attempts to "cherry pick" and distort certain allegations within a series of related allegations of the Complaint that provide background and context to other allegations supporting Burlingame's causes of action. Not only do those allegations provide necessary background and context to the misconduct alleged against the Koellings, but the allegations are also relevant and material to Burlingame's objections to the Koellings' discharge claims under Section 727(a).

Based on the foregoing, the Motion should be denied.

## II.   RELEVANT BACKGROUND

On November 16, 2004, the Koellings filed for protection under chapter 11 of the Bankruptcy Code. On March 5, 2008, the Koellings' bankruptcy case was converted to one under chapter 7 of the Bankruptcy Code; Lois Brady was subsequently appointed chapter 7 trustee of the Koellings' bankruptcy case.

On August 1, 2008, Burlingame filed its Complaint Objecting to Discharge under Bankruptcy Code sections 727(a) and (c) (the "Complaint"), initiating this adversary proceeding. The Complaint asserts four causes of action objecting to the Koellings' discharge under Section 727: Section 727(a)(2) (First Cause of Action), Section 727(a)(3) (Second Cause of Action), Section 727(a)(4) (Third Cause of Action) and Section 727(a)(7) (Fourth Cause of Action).

On October 13, 2008, the Koellings filed a Motion to Strike Portions of Complaint (the "Motion"), moving to strike under Federal Rule of Civil Procedure 12(f) paragraphs 15-17, 19, 25-30, 32, 38-42, 53-55, 56-59 and 66-69 on the basis that the allegations contained therein are irrelevant and immaterial.

For the reasons set forth below, the Koellings' Motion should be denied.

## III. THE MOTION SHOULD BE DENIED BECAUSE IT FAILS TO STATE ANY LEGAL REASON TO STRIKE ANY PORTION OF BURLINGAME'S COMPLAINT

### A. ANY ALLEGATION BEARING ON THE SUBJECT MATTER OF THE LITIGATION IS MATERIAL AND RELEVANT TO THE COMPLAINT FOR PURPOSES OF RULE 12(f) AND, THUS, CANNOT BE STRICKEN

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure which provides, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." For purposes of Rule 12(f), the Ninth Circuit has defined "immaterial" as that which has no bearing on the controversy before the court. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 (1994). "Impertinent" is defined as that which is not responsive or relevant to issues involved in the action and which could not be admitted as evidence in the action. (*Id.*) The Motion does not seek to strike any paragraph in the Complaint on the grounds that the allegations set forth therein are redundant or scandalous.[1]

The grounds for a motion to strike must appear on the face of the pleading under attack, *i.e.*, the Complaint in this action, or from matters which the Court may judicially notice. If there is any doubt as to whether the allegations may be relevant to an issue in the action, or that they relate to or have bearing on the litigation, the motion should be denied. (*Id.*; *see also In re Sriberg*, 49 B.R. 80, 81-82 (Bankr. Mass. 1984). Contrary to the Koellings' suggestion, the burden of proof for purposes of a motion to strike is not the same burden of proof that a plaintiff bears at trial; rather, if there is any question or any possibility that an allegation bears on the subject matter of the litigation, the motion to strike is not proper and must be denied. (*Id.*; *see also Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199, 202 (Bankr. S.D.N.Y. 1983) (holding that where a complaint involves an exception to or denial of a discharge based on the debtor's fraudulent conduct, pleading rules are liberally applied and interpreted).

---

[1] Likewise, the Motion does not seek to strike any insufficient *defense*, as it attempts to attack Burlingame's complaint.

"A motion to strike should not be granted unless the allegations clearly have no bearing on the matter being litigated." *Sriberg*, 49 B.R. at 81. "With regard to the debtor's motion to strike allegations from the Background section of the complaint, it remains to be seen from the evidence to be presented whether the information contained therein, once correlated to the counts set out in the complaint, are ultimately relevant to whether or not the debtor's discharge should be denied. The admissibility and weight to be accorded specific evidence will be determined by the Court at the appropriate time." (*Id*. at 82; *see also United States v. Cresta (In re Cresta)*, 40 B.R. 953, 955 (Bankr. E.D. Pa. 1984) ("A motion to strike must be denied unless the challenged allegation has no possible relation to the controversy.").) Clearly, any allegation bearing on the subject matter of the litigation, including an allegation providing context and background to the Complaint, as shown above in *Sriberg*, should not be stricken under Rule 12(f); rather, as the court in *Sriberg* found, the relevancy, admissibility and weight afforded to the challenged allegation is more appropriate for later determination, when discovery reveals how the allegation correlates to the causes of action.

In particular, with respect to the pleading of fraud in a bankruptcy case, such as under Burlingame's claims under Section 727(a) in this case, a greater liberality is afforded. *O.P.M. Leasing*, 32 B.R. at 203 "[T]his liberality is required because it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors." (*Id*.; *accord Ruyle, O'Dorisio & Kearney v. McGuff (In re McGuff)*, 3 B.R. 66, 70 (Bankr. S.D. Cal. 1980).) Here, Burlingame is in the position of "a third party outsider" to the alleged misconduct that must plead allegations based on secondhand knowledge for the benefit of the estate and its creditors.

Notably, several jurisdictions require a defendant to demonstrate undue prejudicial harm under Rule 12(f). *See, e.g., Davis v. Ruby Foods, Inc*., 269 F.3d 818, 821 (7th Cir. 2001) (counsel should not move to strike unless extraneous allegations were "actually prejudicial"); *Toucheque v. Price Bros. Co*., 5 F.Supp.2d 341, 350 (D. Mo. 1998). Here, the Koellings fail whatsoever to allege undue prejudice under their Motion.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

Furthermore, motions to strike are generally disfavored because they are often used as delaying tactics and because of the general policy of resolving disputes on the merits. *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D. Cal. 2005). Given that there are no reasonable grounds for the Koellings' Motion, the only conclusion that can be drawn is that the Motion is impermissibly intended to delay adjudication of the denial of the Koellings' discharge.

**B. THE ALLEGATIONS CONTAINED IN PARAGRAPHS 15-17, 19 AND 25-20 REGARDING KIDS CONNECTION ARE RELEVANT AND MATERIAL TO DETERMINING THE KOELLINGS' DISCHARGE AND MUST NOT BE STRICKEN**

The Motion seeks to strike paragraphs 15-17, 19 and 25-30, involve allegations related to Kids Connection and the Koellings, and particularly Linda Koelling. These allegations are relevant and material to Burlingame's claims for non-discharge under Bankruptcy Code section 727, and provide context and background relating to the subject matter of this litigation.

**1. PARAGRAPHS 15-17 INVOLVING KIDS CONNECTION AND THE STATE COURT TRIAL ARE PERTINENT AND MATERIAL TO EACH CAUSE ACTION IN THE COMPLAINT AND TO BURLINGAME'S STATUS AS A CREDITOR**

Paragraphs 15-17 provide:

> 15. On August 3, 2007, after a lengthy jury trial ("State Court Trial"), the jury in Case No. 426631 returned a verdict in favor of Burlingame and against Kids Connection, awarding Burlingame almost $5 million in damages.

> 16. As part of the verdict, the jury found that Kids Connection, through the actions of Linda Koelling, acted with fraud and malice in intentionally interfering with Burlingame's contractual relations.

> 17. On October 2, 2007, the State Court entered its First Amended Judgment in Case No. 426631, in which judgment was entered in favor of Burlingame and against Kids Connection in the amount of $4,739,738.

These allegations support each cause of action of the Complaint, as they pertain directly to the elements set forth in Bankruptcy Code sections 727(a)(2),(3), (4) and (7), *i.e.,* the first, second, third and fourth causes of action in the Complaint, respectively.

Section 727(a)(2) provides that discharge is not available for a debtor who "with the intent to hinder, delay or defraud a creditor… transferred, removed, destroyed, mutilated, or concealed…

(A) property of the debtor, within one year before the date of the filing of the petition, or…

(B) property of the estate, after the date of filing of the petition." 11 U.S.C. § 727(a)(2).

Factors relevant to determining the requisite intent for Section 727(a)(2) include whether (1) the debtor received inadequate consideration for the transfer; (2) there exists a close relationship between the debtor transferor and the transferee; (3) the transfer was in anticipation of a pending suit; (4) the debtor transferor was insolvent or in poor financial condition at the time; (5) all or substantially all of debtor's property was transferred; and (6) the transfer so completely depleted the debtor's assets that the creditor was hindered or delayed in recovering any part of the judgment. *In re Woodfield*, 978 F.2d 526, 518 (9th Cir. 1992). Intent may be established by circumstantial evidence or by inferences drawn from the debtor's course of conduct. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986). Additionally, the time of transfer or concealment is not controlling under Section 727(a)(2); rather, where the concealment continues into the year before bankruptcy or even during bankruptcy, a debtor may still be denied a discharge under Section 727(a)(2). *In re Lawson*, 122 F.3d 1237, 1240-41 (9th Cir. 1997).

Section 727(a)(3) provides that discharge is not available for a debtor who "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). Notably, proof of fraudulent intent is not required under Section 727(a)(3). *See In re Scott*, 172 F.3d 959 (7th Cir. 1999). The Ninth Circuit has held that a debtor knowledgeable about the bankruptcy process who transacted its business in cash and failed to keep adequate records thereof, violated its duty to maintain adequate records; thus, the debtor was denied a discharge under Section 727(a)(3). *Stewart Enterprises, Inc. v. Horton (In re Horton)*, 621 F.2d 968, 974 (9th Cir. 1980); *see also In re Schifano*, 378 F.3d 60, 68 (1st Cir. 2004)("Complete disclosure is in every case a condition precedent to the granting of discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the [§ 727(a)(3)] applies.").

Section 727(a)(4) provides that discharge is not available for a debtor who "knowingly and fraudulently, in or in connection with the case… (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information…" 11 U.S.C. § 727(a)(4). Harm to a creditor is not required for an objection to discharge under Section 727(a)(4). *See In re Bernard*, 96 F.3d 1279, 1281-82 (9th Cir. 1996). Similar to Section 727(a)(2), intent may be established by circumstantial evidence or by inferences drawn from the debtor's conduct. *See Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). Additionally, reckless indifference to the true facts is sufficient to show that a debtor acted knowingly and fraudulently for purposes of Section 727(a)(4). (*Id.*) Because a debtor's bankruptcy schedules are signed under penalty of perjury, a false oath for purposes of Section 727(a)(4) can involve a false statement or omission in the debtor's schedules. *See Kendall v. Turner (In re Turner)*, 335 B.R. 140, 148 (Bankr. N.D. Cal. 2005) (schedules omitting interest in home); *Tranche 1 v. Tan (In re Tan)*, 350 B.R. 488, 495 (Bankr. N.D. Cal. 2006) (schedules omitting interests in several closely-held corporations). A debtor's amendment of false schedules does not negate the initial false oath in the original schedules. *See In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001). Furthermore, because a debtor's monthly operating reports are signed under penalty of perjury, a false statement or oath for purposes of Section 727(a)(4) can likewise involve a false statement or omission in the debtor's monthly operating reports filed in the case.

Section 727(a)(7) provides that discharge is not available for a debtor who "has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7). "Insider" is defined under Bankruptcy Code section 101(31) to include a corporation, such as Kids Connection, Inc. ("Kids Connection") and QMECT, Inc. ("Qmect") in this case, of which the debtor (*i.e.*, the Koellings) is a director, officer or person in charge. 11 U.S.C. § 101(31).

1  Clearly, pursuant to these code provisions, discharge is not available to a debtor who, with

2  the intent to hinder, delay or defraud a creditor, concealed, destroyed or mutilated property of the

3  estate within one year of bankruptcy or during the bankruptcy case; destroyed, mutilated or

4  destroyed its books and records from which the debtor's financial condition or business

5  transactions could be ascertained; made a false statement or oath or presented a false claim in a

6  case; or engaged in any of this misconduct in connection with the bankruptcy case of an insider,

7  either during the debtor's bankruptcy case or within one year thereof.

8  Here, paragraphs 15-17 include allegations regarding a State Court trial that resulted in a

9  jury verdict finding that Linda Koelling, as the president, sole stockholder, principal and

10 controlling person of Kids Connection, committed fraud and malice by interfering with

11 Burlingame's contractual relations.  (Moffitt Decl., ¶ 4, Ex. 1.)  The State Court trial also involved

12 Fred Koelling and Qmect, Inc.  (*Id.*)  The Koellings' actions, which included Kids Connection and

13 Qmect– both debtor entities, involved, among other things, efforts to hinder, delay and defraud,

14 conceal, and falsify books and records.  Therefore, these allegations pertain to Burlingame's

15 claims under Section 727(a)(2), (3) and (4).  From the circumstances surrounding this misconduct,

16 among other things, as shown in the above paragraphs and throughout the Complaint, a finder of

17 fact could infer that the Koellings had the requisite intent under Sections 727(a)(2) and (4).

18 Similarly, these allegations would also be relevant and material to Section 727(a)(7).

19 The Motion should also be denied because the allegations set forth in paragraphs 15 and 17

20 provide background and context to the remaining allegations of the Complaint and provide part of

21 the overall picture of why the Koellings should be denied a discharge in the case.  As noted above,

22 any allegation relating to the subject matter of the litigation is relevant and material to the action

23 for purposes of Rule 12(f) and, thus, should not be stricken.  For this additional and independent

24 reason, paragraphs 15-17 should not be stricken.

25 Defendant's alter ego argument misses the mark.  Burlingame is not alleging as part of its

26 objection to the Koellings' discharge that Kids Connection is the alter ego of Ms. Koelling.

27 Rather, Burlingame includes allegations relating to Kids Connection because, as noted above, they

28 are relevant and material to the elements necessary for Section 727(a)(2), (3), (4) and (7).

### 2. PARAGRAPH 19 INVOLVING THE KOELLINGS' PERSONAL EXPENSES IS RELEVANT AND MATERIAL TO BURLINGAME'S CAUSES OF ACTION UNDER SECTION 727(A)(2), (3) AND (4)

Paragraph 19 of the Complaint provides,

19. Linda Koelling further stated that in 2000, her daughter's wedding, which was expensed through Kids Connection, amounted to $100,000 alone.

This allegation supports Burlingame's claims under Sections 727(a)(2), (3) and (4). As noted above, Sections 727(a)(2), (3) and (4) provide that a discharge is not available to a debtor who, with the intent to hinder, delay or defraud a creditor, concealed assets of the estate during its bankruptcy case or within a year thereof (per Section 727(a)(2)); concealed, destroyed or mutilated its books and records from which the debtor's financial condition and business transactions could be ascertained (per Section 727(a)(3)); or submitted a false oath or false claim or withheld pertinent financial information in connection with its bankruptcy case (per Section 727(a)(4)).

Here, the Complaint alleges that Ms. Koelling paid substantial personal expenses through Kids Connection. The payment of these expenses was not disclosed in the Koellings' monthly operating reports or schedules, despite both being signed under penalty of perjury. Paragraph 19 relates and pertains to the substantial personal expenses paid for through Kids Connection and concealed by the Koellings. The allegations also pertain and relate to the Koellings' state of mind. Furthermore, to the extent the Koellings received distributions from or payments of their expenses by Kids Connection, such benefits would reduce the amount of any employment obligation or other debt allegedly owed to the Koellings by Kids Connection. Such payments and distributions, however, have not been taken into account in the Koellings' claims against Kids Connection's estate. (*See, e.g.,* RJN, Exs. B-D, G and K.) Burlingame has repeatedly tried to discover the Koellings' personal expenses run through Kids Connection, but the information has been concealed and not been provided. (*See, e.g.*, RJN, Exs. H-J.)

The time of a debtor's transfer or concealment is not determinative of non-discharge under Section 727(a); rather, a debtor may still be denied a discharge where the debtor's concealment or misrepresentation continues into the bankruptcy or within one year thereof. *In re Lawson*, 122 F.3d at 1240-41. Additionally, a false statement set forth in the debtor's schedules or monthly

operating reports constitutes a false claim or false oath for purposes of Section 727(a)(4). Here, among other things, paragraph 19 evidences the Koellings' on-going concealment of assets, concealment of information and records regarding the Koellings' financial condition and transactions, and submission of a false oaths and statements. Accordingly, Paragraph 19 is relevant and material to Burlingame's claims under Sections 727(a)(2), (3) and (4).

The Motion should also be denied for the additional and independent reason that Paragraph 19 provides context and background pertinent to Paragraphs 18 through 23, regarding Ms. Koelling's involvement with Kids Connection and Ms. Koelling's pattern and practice of misrepresenting and concealing material information. Paragraph 19 also provides additional context for Burlingame's other allegations (which the Motion is not seeking to strike) regarding the Koellings' concealment of income and cash received from scrap metal sales, concealment of their ownership of a Mercedes Benz SL 430, and their destruction of important computer records. Again, the allegations also provide context and relevant information from which a trier of fact could infer the Koellings' state of mind. As noted, any allegation related to the subject matter of the litigation is relevant and material to a complaint for purposes of Rule 12(f). Therefore, because Paragraph 19 provides important context and background to the subject matter of this litigation, the allegations set forth therein are relevant and material and should not be stricken.

### 3. PARAGRAPHS 25-30 ARE RELEVANT AND MATERIAL TO BURLINGAME'S CLAIMS UNDER SECTION 727(A)(4) AND (7)

Paragraphs 25-30 provide,

25. In September 2002, recognizing the collection efforts that would follow the payment default and wanting to protect her interest in Kids Connection, Linda Koelling entered into an employment agreement with Kids Connection that she intended would provide her with a severance and continuity of income in the event of an attempt to takeover Kids Connection. As part of the employment agreement, Linda Koelling encumbered Kids Connection's personal property with a security interest and Kids Connection's real property with a deed of trust.

26. Shortly after Linda Koelling entered into the employment agreement with Kids Connection and the security interests and deed of trust were recorded, on October 2, 2002, Burlingame sent a Notice of Default and Demand for Payment on the defaulted loan to both QMECT and the Koellings personally.

27. During their Bankruptcy Case (on or about March 1, 2005), the Koellings filed amendments to their Schedules B and C, which they signed under penalty of perjury, to list Linda Koelling's "[e]mployment contract with Kids Connection,

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

Inc." as an alleged other liquidated debt owing to the Debtors in the amount of $1,050,000 and to claim the alleged amount due under the employment contract with Kids Connection, Inc. as exempt under California Code of Civil Procedure section 704.070. The Koellings originally omitted the alleged obligation under the employment agreement from the schedules initially filed in their Bankruptcy Case.

28.     Later in the Koellings' Bankruptcy Case, the Koellings conceded, in the face of objections by Burlingame and the chapter 7 trustee in their case, that their claim of exemption with respect to the alleged amount due under the employment contract had no merit.

29.     In the schedules filed in the Kids Connection bankruptcy case, signed by Linda Koelling as President of the Debtor under declaration of penalty of perjury that the schedules were true and correct, Kids Connection listed the debt allegedly owed to Linda Koelling under the employment agreement and related security interests as $250,000.

30.     During the State Court Trial, Linda Koelling admitted that she had not received, nor would she receive compensation under the Employment Agreement, but rather that the Employment Agreement was intended to purportedly create a severance obligation to discourage a hostile takeover of Kids Connection.

These allegations are relevant and material to Burlingame's objection to discharge under Sections 727(a)(4) and (7) and, thus, should not be stricken. As noted, an objection to discharge under Section 727(a)(4) applies to a debtor who knowingly and fraudulently makes a false claim/oath in connection with its case; an objection to discharge under Section 727(a)(7) applies to a debtor who commits such misconduct[2] in connection with the bankruptcy case of an insider, during or within one year of the debtor's bankruptcy filing.

Here, Paragraphs 25-30 include allegations that Ms. Koelling attempted to assert a claim based on an employment agreement that she later conceded did not entitle her to any payments, and further attempted to assert a claim of exemption, which she also later conceded had no merit. Despite these later concessions, Ms. Koelling had filed a schedule, signed under penalty of perjury, asserting these rights in her personal bankruptcy case. (*See, e.g.*, RJN, Ex. L.) Ms. Koelling also signed schedules and submitted a proof of claim in the Kids Connection bankruptcy case, asserting these purported rights as well. (RJN, Exs. B-D and K.)

As noted above, filing a false statement in a schedule is grounds for denial of a discharge under Section 727(a)(4). Accordingly, Paragraphs 25-30 are clearly relevant and material to

---

[2]     Or other misconduct outlined under Sections 727(a)(2)-(6).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

Burlingame's objection to discharge under Section 727(a)(4) that the Koellings knowingly and fraudulently filed a false claim in their case. Additionally, Paragraphs 25-30 are clearly relevant and material to Burlingame's claim under Section 727(a)(7) in that the Koellings also engaged in this misconduct in connection with the bankruptcy case of Kids Connection, an insider, during their own personal bankruptcy. For this additional and independent reason, Paragraphs 25-30 should not be stricken.

The Koellings' focus on the exemption allegation is a red herring. The allegation involving Ms. Koelling's exemption attempt is simply part of the "knowing" and "fraudulent" presentment of the false claim. It is well-established that the knowing and fraudulent presentment of an inflated or fictitious claim can be grounds for non-discharge under Section 727(a)(4). *See In re Gollomp*, 198 B.R. 433, 439 (S.D.N.Y. 1996). The Koelling's reliance on *In re Garcia*, 168 B.R. 403 (D. Ariz. 1994) is misplaced. *Garcia* did not involve a motion to strike. Furthermore, the creditor in *Garcia* had based its entire objection to discharge on the debtor's claim to a homestead exemption. That is not the case here. Furthermore, presentment of a fictitious or inflated claim of exemption can constitute presentment of a false claim, which is grounds for denial of a discharge under Section 727(a)(4). *See* K. March, A. Ahart & L. Tchaikovsky, California Practice Guide: Bankruptcy, ¶ 22.930, at p. 22-99 (Rutter Group 2007)("A debtor will be denied a discharge where: the debtor knowingly and fraudulently presented or used an inflated or fictitious claim (e.g., claims of exemptions) . . . ."). Moreover, as noted, Burlingame's allegations regarding the Koellings' claim of exemption add context and background to their false statements, concealment of the true financial affairs and transactions of the Koellings, and the overall misconduct by the Koellings in this case and in the bankruptcy cases of Kids Connection and Qmect, entities owned, operated and controlled by the Koellings during the relevant time period. (*See, e.g.,* RJN, Ex. A and E.) Therefore, as these allegations relate to the subject matter of the litigation, striking them under Rule 12(f) would be improper.

The allegations in paragraphs 25-30, along with the other allegations in the Complaint, are also relevant to the Koellings' state of mind and the inferences that may be drawn by the trier of fact in the case.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1    The Koellings' emphasis on the burden of proof that a plaintiff must bear at trial is also a

2    red herring.  As detailed above, any allegation that bears, in any way, on the subject matter of the

3    litigation, such as the exemption allegation in this case, is a material and relevant part of the

4    complaint for purposes of Federal Rule of Civil Procedure 12(f) and, thus, cannot be stricken.

5    **C.    THE MOTION SHOULD BE DENIED BECAUSE THE ALLEGATIONS
            CONTAINED IN PARAGRAPH 32 REGARDING QMECT ARE

6         RELEVANT AND MATERIAL TO DETERMINING WHETHER THE
            KOELLINGS' ARE ENTITLED TO A DISCHARGE**

7

8    Paragraph 32 provides,

9    32.    During the QMECT bankruptcy case, this Court found that Fred Koelling
            knowingly and consciously skirted and violated environmental regulations in

10        connection with the storage and disposition of hazardous materials, and that
            QMECT had been guilty of violating bankruptcy law in several respects.

11

12   As noted, an objection to discharge under Section 727(a)(7) applies where (1) a debtor

13   engaged in conduct prohibited by Sections 727(a)(1)-(6); (2) in connection with the bankruptcy

14   case of an insider; and (3) either during the debtor's bankruptcy case or within one year thereof.

15   As noted above, Qmect is an entity that was operated and controlled by the Koellings.

16   (*See* RJN, Ex. A.)  On February 27, 2004, Qmect filed for bankruptcy protection under chapter 11

17   of the Bankruptcy Code.  On May 7, 2004, this Court entered an order appointing Debtor Fred

18   Koelling as the responsible individual and debtor-in-possession of Qmect.  (RJN, Ex. A; Moffitt

19   Decl., ¶ 3.)  Mr. Koelling remained the responsible individual until March 2006 when a receiver

20   was appointed to take control of Qmect's assets.  (*Id.*)

21   As responsible individual of Qmect, Mr. Koelling was required to manage and control

22   Qmect's estate within the confines of law and for the benefit of all creditors.  Specifically, as

23   required by Section 959(b) of title 28 of the United States Code, Mr. Koelling was required to

24   "manage and operate the property…according to the requirements of the valid laws of the State in

25   which such property is situated, in the same manner that the owner or possessor thereof would be

26   bound to do if in possession thereof."  See 28 U.S.C. § 959(b).

27   Here, the allegations in paragraph 32 outline, as found by this Court, Mr. Koelling's

28   knowing and conscious failure to comply with environmental regulations and, thus, his failure to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

properly manage Qmect within the confines of law, a violation of the May 7th order entered by this Court. Therefore, these allegations are relevant and material to the Koellings' failure to obey an order of this Court, conduct prohibited under Section 727(a)(6). Because this misconduct occurred in connection with the bankruptcy case of Qmect, an insider, and occurred within one year and during the Koellings' bankruptcy case, these allegations are relevant and material to Burlingame's cause of action under Section 727(a)(7). As such, the allegations should not be stricken and the Motion should be denied.

**D.  THE MOTION SHOULD BE DENIED BECAUSE THE ALLEGATIONS CONTAINED IN PARAGRAPHS 38-42 ARE RELEVANT AND NECESSARY TO DETERMINING WHETHER THE KOELLINGS ARE ENTITLED TO A DISCHARGE**

Paragraphs 38-42 provide,

38.    As set forth above, beginning in July 2002, QMECT was in payment default on its obligations to Burlingame, which the Koellings had personally guaranteed.

39.    In June 2003, Burlingame scheduled a foreclosure of its interest in QMECT's stock (85%), which had been assigned as security to Burlingame for its loan to QMECT.

40.    On the eve of the public auction of the QMECT stock, Fred Koelling, Linda Koelling, Kids Connection and others, caused QMECT to issue additional stock, thereby diluting to 12% what would have been Burlingame's controlling interest in QMECT's stock and derailing the impending foreclosure.

41.    In the trial in Adversary Proceeding 04-4190, this Court found the Koellings' actions intentionally and tortiously interfered with Burlingame's contractual rights and that their actions were designed to frustrate and defeat the stock foreclosure.

42.    As set forth above, in the State Court Trial, the jury likewise found the conduct of Kids Connection (through the actions of Linda Koelling) intentionally interfered with Burlingame's loan agreements and found Kids Connection guilty of fraud and malice.

As noted, any allegation that relates to the subject matter of the litigation is relevant and material to a complaint such that it should not be stricken under Federal Rule of Civil Procedure 12(f). *See In re Sriberg,* 49 B.R. at 81-82; *O.P.M. Leasing,* 32 B.R. at 2020. Here, Paragraphs 38-42 describe the Koellings' deliberate conduct to hinder, delay, defraud and thwart Burlingame's efforts to foreclose on Qmect. As set forth throughout this Opposition and the Complaint, the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

Koellings' misconduct, as alleged in paragraphs 38-42, was part of the overall conduct and actions of the Debtors, provides context to other events that occurred, and relate to the Koellings' state of mind and the inferences that may be drawn by the trier of fact. As such, the allegations contained in those paragraphs are relevant to the subject matter of this litigation and, thus, cannot be stricken under Rule 12(f).

**E.  THE MOTION SHOULD BE DENIED BECAUSE THE ALLEGATIONS IN PARAGRAPHS 53-55 REGARDING QMECT'S AND THE KOELLINGS' RECORDS ARE RELEVANT AND MATERIAL TO DETERMINING WHETHER THE KOELLINGS ARE ENTITLED TO A DISCHARGE**

Paragraphs 53-55 provide,

53.     During the litigation that was pending as of the Petition Date and during the QMECT bankruptcy case, disputes arose over the existence and production of correspondence between Fred Koelling, QMECT, Burlingame, and Comerica Bank (which had also lent money to QMECT and the Koellings).

54.     Initially, it was represented that there were no further documents to produce. On further examination of Fred Koelling, he testified that there were additional documents related to Comerica Bank to produce. Fred Koelling further testified that there were additional documents related to Burlingame and one of its principals, Robert Judson, to produce, but that his computer where the documents were located had crashed.

55.     Upon further examination, Fred Koelling testified that the computer was located at QMECT, the correspondence in question in the pending litigation was not retained by Mr. Koelling, and that the computer had been thrown away while the litigation was pending and during the QMECT bankruptcy case.

Paragraphs 53-55 contain allegations regarding Fred Koellings' misconduct in connection with his or QMECT's computer, electronic information on the computer and financial records of Qmect and the Koellings during the Koellings' bankruptcy case. As noted, Qmect is an insider of Mr. Koelling, as that term is defined under Bankruptcy Code section 101(31), in that Mr. Koelling operated and controlled Qmect at the time of the alleged misconduct. (*See, e.g.*, RJN, Ex. A.) Also as noted, Sections 727(a)(2), (3) and (7) provide that discharge is not available for a debtor who, with the intent to hinder, delay or defraud a creditor, concealed, destroyed or mutilated property of the estate within one year of bankruptcy or during the bankruptcy case (per Section 727(a)(2); concealed, destroyed or mutilated financial information or records from which the debtor's financial condition or business transactions could be ascertained (per

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

Section 727(a)(3)); or engaged in such misconduct in connection with the bankruptcy case of an insider, either during the debtor's bankruptcy case or within one year thereof.

Here, Mr. Koelling's destruction of the computer and the records thereon, regardless whether Mr. Koelling claims the computer and the records contained thereon were his or Qmect's, is clearly material and relevant to Burlingame's claims under Sections 727(a)(2), (3) and (7) because such allegations evidence the Koellings' destruction, mutilation or concealment of property of the estate during and within one year prior to bankruptcy because the books and records are property and would also reflect both the assets and liabilities of Qmect and the Koellings who were principals, sole shareholders and guarantors of Qmect. The allegations also evidence the Koellings' destruction, mutilation or concealment of financial information/records from which the Koellings' financial condition could be ascertain.

In a recent opinion based on facts similar to those present here, the Ninth Circuit recognized that the failure to keep or preserve adequate books and records from which a debtor's financial condition could be ascertained was grounds for a denial of discharge. In *Caneva v. Sun Communities Operating L.P. (In re Caneva)*, ____ F.2d _____, 2008 Westlaw 4791680 (9th Cir. November 5, 2008), a debtor filed various schedules and amendments thereto, stating that the scope of its interest in several affiliated businesses was unknown. At a subsequent Bankruptcy Rule 2004 Examination, the debtor conceded that it did not have records for the entities. The Ninth Circuit noted that Section 727(a)(3) imposes "an affirmative duty on the debtor to create books and records accurately documenting his business affairs" and, consequently, rejected the debtor's argument that because certain of the entities were merely holding companies that did not conduct business, records did not exist. (*Id*. at \*3 (citing *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999).) The lower court found that the debtor's failure to keep or preserve such recorded information was grounds for denial of discharge under Section 727(a)(3) and, based thereon, entered summary judgment against the debtor. The Ninth Circuit affirmed.

Here, as alleged in Paragraphs 53-55, not only did Debtor Fred Koelling fail to produce financial books and records from which the Koellings and Qmect's financial condition and business transactions could be ascertained, but Mr. Koelling further conceded that he destroyed

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

such information. Further amplifying the misconduct and, consequently, demonstrating that the facts in the current action are more egregious that those in *Caneva*, is that such destruction and mutilation occurred while the Koellings were in bankruptcy AND while the Koellings were engaged in litigation in State Court. As shown by *Caneva*, these allegations are clearly relevant and material to Burlingame's cause of action under Section 727(a)(3) and, thus, cannot be stricken.

The allegations in Paragraphs 53-55 also evidence proscribed conduct (e.g., Sections 727(a)(2) and (3)) which the Koellings engaged in during Qmect's bankruptcy case and during their own bankruptcy case. As the alleged misconduct occurred during litigation, a trier of fact may draw inferences regarding the Koellings' state of mind, for example, for purposes of Section 727(a)(2). Furthermore, "[c]omplete disclosure is in every case a condition precedent to the granting of discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the [§ 727(a)(3)] applies." *In re Schifano*, 378 F.3d at 68. Additionally, Mr. Koelling's testimony that the destroyed computer was his computer located at Qmect, establishes an inference that the misconduct related to the Koellings' personal bankruptcy case, Qmect's bankruptcy case, or both. A motion to strike the allegations is improper. *See Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2nd Cir. 1984), vacated on other grounds 478 U.S. 1015 (1986).

Therefore, these allegations are relevant and material to the subject matter of this litigation and are a proper part of the Complaint. As such, the allegations should not be stricken.

**F.  THE MOTION SHOULD BE DENIED BECAUSE THE ALLEGATIONS CONTAINED IN PARAGRAPHS 56-59 AND 66-69 REGARDING QMECT'S RECORDS ARE RELEVANT AND MATERIAL TO DETERMINING THE KOELLINGS' DISCHARGE**

Paragraphs 56-59 and 66-69 provide,

56.    In July 2003, QMECT and Fred Koelling began entering into a series of transactions for the purchase of chemicals from an entity named Cyber Chem, Inc. ("Cyber Chem"). Cyberchem was controlled by Michael Burke ("Burke"), a close personal friend of Fred Koelling, and another individual named Tarek Nahlawi ("Nahlawi"). The transactions continued into 2006.

57.    During QMECT's chapter 11 case, QMECT paid Cyber Chem over $250,000 under the chemical purchase transactions.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

58.    Cyber Chem did not manufacture the chemicals, but instead simply ordered the chemicals from another vendor and had them blended in Tennessee.

59.    Nevertheless, the profit margins on QMECT's chemical purchase transactions from Cyber Chem were sizeable.

. . . .

66.    In response, Fred Koelling instructed Burke to prepare an invoice for chemicals and submit it to QMECT for payment, which Burke did.  Burke testified that the invoice was *not* for chemicals sold to and purchased by QMECT.

67.    QMECT paid the invoice in the amount of $12,577.40 with a check signed by Fred Koelling.

68.    At the time of the payment, there was a cash collateral order in place in the QMECT bankruptcy case, which, among other things, provided Burlingame with a blanket lien against all of QMECT's assets.

69.    On information and belief, other payments were also made by Cyber Chem (at Burke's direction) for the benefit of the Koellings and not reported in the Koellings' Bankruptcy Case or in the QMECT's bankruptcy case.

The above paragraphs are relevant and material to each of Burlingame's causes of action under Section 727 and, thus, should not be stricken.

Burlingame claims the Koellings' discharge should be denied under Sections 727(a)(2), (3), (4) and (7).  As detailed throughout, these sections provide that a debtor may be denied a discharge where, as with the Koellings' in this case, the debtor, with the intent to hinder, delay or defraud a creditor, concealed, destroyed or mutilated property of the estate within one year of bankruptcy or during the bankruptcy case (per Section 727(a)(2)); destroyed, mutilated or concealed its financial documents or records or failed to keep adequate books and records from which the debtor's financial condition or business transactions could be ascertained (per Section 727(a)(3)); made a false claim or oath or withheld information in connection with its case (per Section 727(a)(4)); or engaged in such misconduct in connection with the bankruptcy case of an insider, either during the debtor's bankruptcy case or within one year thereof.

The allegations set forth above are part of a series of allegations involving the Koellings, Qmect, Kids Connection and Cyberchem, which provide grounds to deny the Koellings a discharge under Sections 727(a)(2), (3), (4) and (7).  The allegations in these paragraphs demonstrate, among other things, that the Koellings took property of Qmect, transferred it to

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

others, including Kids Connection, and attempted to conceal the misconduct. The Koellings failed to report these transactions as income in their personal bankruptcy case. Furthermore, Fred Koelling concealed the transactions involving Cyberchem in Qmect's bankruptcy case, which, among other things, defrauded creditors, concealed assets, violated court orders, presented false statements and accounts, and failed to keep adequate financial records from which the business transactions could be ascertained.

These allegations demonstrate, among other things, the Koellings' concealment of income in their personal bankruptcy case, a violation pertinent to Sections 727(a)(2) and (3); their failure to disclose/keep adequate books and records from which to ascertain their financial condition and assess their business transactions, a violation pertinent to Section 727(a)(4); and their misconduct in connection with Qmect's bankruptcy case, during and within one year of the Koellings' bankruptcy filing, including a violation of court orders under Section 727(a)(6), which violates Section 727(a)(7).

Clearly, these allegations are relevant and material to all of Burlingame's causes of action objecting to the Koellings' discharge under Section 727 and, thus, should not be stricken under Rule 12(f).

## IV.    CONCLUSION

For the foregoing reasons, the Koellings' Motion to Strike Portions of Complaint must be denied. Should the Court strike any portions of the Complaint, Burlingame requests leave to amend the Complaint.


Dated:  November 6, 2008                          ALLEN MATKINS LECK GAMBLE
                                                                    MALLORY & NATSIS LLP


                                                  By:   */s/ Marlene Moffitt*
                                                        MARLENE M. MOFFITT
                                                        Attorneys for Plaintiff
                                                        Burlingame Capital Partners II, L.P.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**